A wonderful job. I hope to see you back here again. I'll take the matter in advisement. Thank you. Next case is Moore-Duncan versus Sheet Metal Workers International. You go to the chair on that. Ms. Compton? May it please the Court, my name is Kasey Compton for the Labor Board and I'd like to request, please, two minutes for rebuttal. This case involves the Labor Board's appeal from the District Court's denial of a preliminary injunction based on Section 10L of the National Labor Relations Act. The Board's appeal raises two main questions before this Court related to the District Court's application of the Section 10L standard. Number one, did the District Court err by concluding that the Regional Director lacked reasonable cause to believe that Local 27's lawsuit had an illegal objective that violates the Act? And number two, did the Court abuse its discretion by refusing to temporarily enjoin Local 27 from further prosecuting its illegal lawsuit until the Board decides whether in fact that That's still a memo, I assume. I'm sorry? The Board's decision about the un-for-labor practice, I assume, is still a memo? It is still pending, yes. And I would submit to this Court that the answer to both of those questions is yes. And I would ask this Court to reverse the District Court. Where did the Court go wrong? First, on reasonable cause. What is your contention in terms of where the Court went wrong on reasonable cause? Your Honor, well, first this Court, I'm sorry, this case really involves a run-of-the-mill, straightforward work jurisdictional dispute. Basically, the employer, E.P. Donnelly, was caught between two unions, Local 27, sheet metal workers, and the carpenter's union. And both unions claimed the right to do certain work at a project in Ag Harbor, New Jersey. Is it fair to say that it caught itself? I mean, that sounds like it was victimized. I mean, it never should have bid the job. I mean, bidding the job put it in a catch-22 because it had pre-existing obligations to the carpenter's union that it would have to breach if it fulfilled its obligations under the PLA. Your Honor, I think that you're certainly picking up on a concern that the District Court had. First of all, I'd like to say that there's no evidence in the record that Donnelly had unclean hands here. There was a dispute. I'm not saying they were unclean or anything. I'm just saying they made a mistake. Isn't it simply correct to say they never should have bid the job because they could not honor their obligations to the carpenter's union once they won work under the PLA? Well, I don't think there's no evidence in the case that, in the record, that Donnelly knew that the carpenters weren't, for instance, a signatory to the PLA. I think that... How does that usually work when these jobs are bidden? There's this kind of an agreement in place. Does someone from the employer check to see who the unions are that it would be and whether or not that conflicts with any collective bargaining agreement they may have in place with a different union? How does that usually work? Frankly, Your Honor, I know that in this case, a company called Sambi was the general contractor. It was obligated to the PLA and then subcontracted a part of its work to Donnelly here. Donnelly signed a letter which basically bound it to the PLA. And frankly, there was a dispute below as to whether Donnelly knew who was a signatory. I think they testified at some point that they just simply knew that the project was, quote, union. And they didn't necessarily know which union. But I would like to direct the Court to the fact that in every work jurisdictional dispute, there are more than likely going to be two valid contractual claims. Why is that? I'm sorry? Why is that? That doesn't make any sense to me. I mean, if my company has a contract with Union X, then I need to honor that contract. And it seems to me the Board is asking us to hold something that would be terribly unfair to the union that has the preexisting relationship with the company. You're asking us to allow the preexisting relationship to be cast aside whenever the company gets a better deal with a new job that, as long as it involves union labor, it can cast aside its preexisting binding contract with the other union. Where's the equity in that? Well, the fact is that Donnelly invoked the Board's process under Section 10K of the Act to decide this dispute. It went to the Board and it said, I have two conflicting claims. Two unions are claiming to do this work. Please decide who I give the work to. In December of 20- Mr. Charterman's point, I think, is at that point, the horse was already out of the barn. Toothpaste was out of the tube, however you want to phrase it. It was too late at that point. They already had created a situation which couldn't be reconciled. Once they went to the Board in addition to 10K, I think he's suggesting to put themselves in that situation, it was too late. But that is the whole point of Section 10K, is to deal with these kinds of work jurisdictional disputes. To make sure the work gets done. To make sure the work gets done. All right. Now, that gets me to what I understand to be the crux of the case. The work got done. The Local 27 did the work. Carpenters are set aside. Actually, Your Honor, if I may, the carpenters, the Board decided that the carpenters should be awarded the work, and the carpenters did, in fact- I'm sorry. Do the work. I got it backwards. That's okay. So Local 27 had the preexisting relationship. The carpenters had a collective bargaining agreement with the employer. If I could just maybe lay out the facts real fast. Donnelly was awarded this subcontract from Sambi to do this project in Ag Carpenter, New Jersey. It was a public works project, so therefore the project itself was governed by this PLA. Donnelly also had a prior collective bargaining relationship and collective bargaining agreement with the Carpenters Union. Now, the Carpenters Union was not a signatory to the PLA. So when Donnelly shows up to start doing the work, it has both Local 27 claiming the right to do the work through the PLA, and the carpenters claiming the right to do the work through their contract. So at that point, Donnelly goes to the board through Section 10K of the Act. The board decides, based on its traditional criteria, that the work should go to the Carpenters Union. The Carpenters Union did, in fact, do the work. The work is now long completed. The problem is, is that Local 27 has continued a lawsuit in district court seeking damages from Donnelly for having given the work to the Carpenters. Now, the reason why that's a problem is because it's absolute black-letter law, including from the law in this circuit in the Gundle case, that a losing union to a 10K proceeding cannot seek damages in lieu of work when the board decided that the work should go somewhere else. All right. Go ahead. I got my unions back. That's okay. I'm sorry. Thank you for claiming the right. Right. They both claimed a right. The sheet metal workers are saying, we wanted the job because we had a right to it under the PLA. Under the PLA. And Donnelly, being in this Catch-22, went with their pre-existing relationship, the Carpenters. Correct. All right. Well, it went to the board. And the board. To have the board decide. Right. And the board plays a vital role here because if it's stuck in the mud between the competing claims of the unions, then the work doesn't get done. Right. All right. But why shouldn't we allow the damages action to go forward? The work has been done in a timely fashion. The board served its role. And asking the question another way, you say on page 39 of your brief that what I call overruled Gundel 1, the Hobart case. Right. Gundel 2 can't overrule Gundel. I think you're right that we can't reconcile Gundel 2 and Gundel 1. I agree with you on that. But we can't do that. As a court. Well, I think, well, first, let me address the fact that the work got done and how the lawsuit plays into Section 10K. And then, if I may, I could address Gundel. This court said in Gundel, Gundel 2, that a lawsuit that seeks damages in lieu of work is pretty much the same as seeking reassignment of the work itself. If we follow Gundel 2, you win. But I'm saying how can we follow Gundel 2 when it's inconsistent with Gundel 1? Well, I think Gundel 1 was at the injunction stage. I mean, the board was trying to get an injunction against the lawsuit, just as in this case, just like where we are now. The court in Hobart or Gundel 1, I think the court premised its reasoning on its assumption that the lawsuit in that case was lawful. And so it was very concerned about enjoining a lawful lawsuit. In Gundel. Why would it matter? But isn't that the situation we have here? When the 10K opinion announced that, of course, parties were not restrained from pursuing any state law claim that was available. Up to that point, the 301 action looked like a perfectly legitimate thing to do, so far as the board was concerned. Yes, sir. Up until the 10K award, the 301 action was lawful, and that's why, in fact, a charge – Donnelly filed charges against both Local 27 and the Carpenters to invoke 10K. The charge against Local 27 was dropped at that point because the 301 lawsuit was lawful. At the point of the 10K award, when that lawsuit was continued as it continues today, at that point it became unlawful because it seeks a result that is directly contrary to what the board ordered. The board ordered that the Carpenters should get the work. Local 27 seeks a different result. Carpenters got the work. The sheet metal workers aren't saying now, give us the work. They're just saying, you breached a contract and pay us the money that we should have earned for work that we were entitled to perform. But as this court said in Gundle 2, seeking damages for work that the board ordered should go elsewhere is an attack on the board order. Well, again, Gundle 2 goes your way, but I don't think you've answered my question. How can we – our internal operating procedures, I think it's 9.1, says that a second panel cannot overrule a prior panel. So don't we have to follow Judge Garth's opinion in Gundle 1? I think that Gundle 2, first of all, is the latter case. And I think it already – Well, that doesn't answer the question. The problem is the latter case cannot overrule a preceding case. That's the problem. And you're saying, well, but we've got to look at the latter case. But what's being asked of you is how can we look at the latter case if there's a square conflict? Well, the latter two – Gundle 2 says there's really no conflict and kind of tap dances around the tension. If that tap dance is legitimate, then there's no problem and you win under Gundle 2. But if it's not legitimate, if there really is a conflict that we just kind of ignored, then there is a problem because Gundle 1 is still there. Well, I think Gundle 2 was simply trying to follow what the majority of circuits have done at this point. But that doesn't help it. I mean, it can't. The time the court came to Gundle 2, if Gundle 1 is sitting there, Gundle 2 can't get around Gundle 1 by saying, well, look, the majority rule is X. I know we're bound by Y, but we're going to do X because that's the majority rule. It's got to go en banc and deal with Gundle 1. So the question that is being asked of you now basically, I guess, is how do we distinguish Gundle 2 and Gundle 1 such that Gundle 2 survives as a legitimate exercise of the court without running afoul of the internal operating procedures when it should have followed Gundle 1? How do you distinguish the two cases? I see my time is up if I may try to answer your question. I think Gundle 1 could legitimately stand for the proposition that if a union brings – or if any party brings a lawful lawsuit that they have a First Amendment right to petition to bring, that this court has every concern to be concerned about enjoining that and thus that may not be appropriate for a preliminary injunction. Gundle 2 recognized the opposite, that when you have a lawsuit that in fact has an illegal objective that seeks a result that is contrary to what the board ordered, because of course the board has primary jurisdiction in the field of labor law. When the board decides an issue and you have a lawsuit that seeks a result that is directly contrary, that is an illegal lawsuit. The party does not have a First Amendment right to bring forth that lawsuit and therefore that is the subject that may be legitimately enjoined. I think that would be a difference between the two. Gundle 1 was premised on the idea that you had a lawful lawsuit, Gundle 2 an illegal lawsuit must be enjoined at that point. My time is up. Can you save some time? Thank you. Good morning. Good morning. If it pleases the court, Mark Belland from O'Brien, Belland in Bushinsky on behalf of the respondent, Sheet Metal Workers, Local 27. Your Honor, Your Honors, we believe that the NLRB cannot show reasonable cause and just and proper standard for the imposition of an injunction. The issue before the court is whether our client, the Sheet Metal Workers, should be labor agreement where the NLRB has, in our view, expressly and unequivocally allowed that lawsuit to continue. For purposes of the reasonable cause standard, I would suggest that the starting point is the 10K award which was issued by the Labor Board. Let me ask this. This came to me, I was looking at this, and I assume because it hasn't been done, I assume that's the answer. It may be that because the board only has two members now, maybe that's the answer. But in a situation like this where there is some ambiguity or some confusion given the 10K language and what that 10K language meant, I kept looking for the except insofar as clause in the 10K award that's not there. Is there no procedure by which you can go back to, assume the NLRB was up and running and had a quorum and functioning, is there no procedure by which you could go back to the NLRB and ask for a clarification of the 10K award? There's a procedure for... It's a good point, Your Honor. There's a procedure for a request for reconsideration. From our standpoint, the language is abundantly clear. The language says what the language says and that is... It doesn't make a lot of sense. No. It's not as clear to me as it is to you. Well, let's read it. The employer... I understand what the words mean. Yeah, would continue to be bound and the parties to the PLA, sheet metal local 27 to party to the PLA, would retain any rights they may have. Would your position be weaker if there were no such recital by the board, if the 10K award didn't have this unusual statement? Our position would be different. Our position is stronger with that language. Why? Why? Why isn't your position stronger to argue that you win under Gundel 1? Doesn't Gundel 1 go your way? It does. Where the 10L injunction was. So why isn't the argument Gundel 1 goes our way, Gundel 2 goes the board's way, this court is bound by Gundel 1, QED? It's a good analysis. Gundel 1, I agree. Thank you, Your Honor. QED is quantum electrodynamics. Quod erat demonstrandum. Oh, okay. I don't know anything about electronics. Interaction of light and matter. What does that have to do with this? No, no. That's just in the Western District. Oh, okay, okay. You're correct, Your Honor. Gundel 1 goes our way. Gundel 2, however, I respectfully disagree because we don't think, in the absence of Gundel 1, that Gundel 2 would control. We think our case is factually distinguishable from Gundel 2. We're dealing with a different situation here, and the situation's different for a number of reasons. In Gundel 2, you really have a contractor who is legitimately stuck in the middle, through no fault of its own, finds itself caught between two competing unions with two competing claims. But isn't that, doesn't, isn't that, her argument, doesn't that mean that the board is there to do that, that it's the board's policy, and that's why the standard for an injunction under 10J or 10L is very different from a traditional injunction, because we want the board to be in charge of the national labor relations and labor policy, and not the district and appellate courts? And that's correct. We don't quarrel with it. But that's not the scenario that the district court judge had before her. The scenario is quite different. There you have a contractor that had a pre-existing relationship with the carpenters' union, and decides to bid on a project under a project labor agreement, which is occasioned by state law, and has a decision to make. And that decision is either to bid the project or not. And it's not acceptable that Donnelly didn't ask or didn't inquire as to whether the carpenters were party to that agreement. And the reason why that's important is the project labor agreement has an internal dispute resolution mechanism for jurisdictional disputes. That's what the sheet metal workers availed themselves of. And that's one of the policy considerations which support the PLA statute in New Jersey. So it would avoid the necessity for the NLRB intervention in the 10K process. There's an internal mechanism. They wouldn't have any, and that's why I think the carpenters didn't participate. They wouldn't have any jurisdiction over the carpenters, would they, because they're not a party to the PLA? Well, and that's the question. I think the district court read into that, that, you know, perhaps there was some funny business going on between Donnelly and the carpenter. And Donnelly was not the innocent player, like the contractor in Gundle, where Donnelly knew full well that if the carpenter is not signatory to the PLA, then the internal jurisdictional process within the PLA that is sanctioned under state law would not be available to the parties. And that's all our client did. I'm not sure what sanctioned under state law means. It's sanctioned except if it's preempted by federal law, right? But I think it's established that, Your Honor, that your point is well taken, that it's not preempted by state law, and I think that's the instruction of Boston Harbor, is that state entities, public entities, when they're not acting as a regulator, they're acting as a proprietor, can enter into project labor agreements and can require, as a condition of performing the work, that all bidders adhere to the project labor agreement. So I think the point is... But isn't all the 10-K language you're trying to say very inartfully, but it looks like what the board was trying to do is basically say, okay, we think the work should go to 623 because of not just the collective bargaining agreement, but all these other things we look to in determining jurisdictional disputes. But nevertheless, this PLA, like all PLAs, is still intact, and the parties to this PLA, like the parties to all PLAs, still enjoy their rights under the PLA. It sounded like it was trying to basically say, look, we're aware of Boston Harbor. The fact we're awarding this work to 623, which is inconsistent with the PLA, does not mean that we're telling the PLA it's invalid. And so they have this language in here which then seems to undermine the board's own award. You say it's clear, but maybe you can help bring some clarity to me. I don't... If the board was just attempting to say that the PLA statute in New Jersey and the PLA itself was not preempted, and that the board had primary jurisdiction and therefore preempted it, they did not need to go as far as they did, particularly in light of the fact, and the district court judge points this out in her opinion, the board knew about the 301 lawsuit. The time the 10-K decision was issued, in fact, there's a footnote in the 10-K award. Was there something to say about that? Because there was a submission made to the board, and it's not at all clear. They said the board apparently ruled that out of order, and it's not at all clear as to whether or not that was properly before the board and the board looked at it. If you read the footnote, the board received our submission. We sent actually a copy of the transcript on the preliminary injunction request that we had made with respect to the work. So the board acknowledged receipt of it, decided not to make it part of the record, but nonetheless, as the district court concluded, it was before the board. How is it before the board if it's not part of the record? How does it get before the board? The district court considered the board had it, and your point's well taken, Your Honor, that it was not actually part of the record, but the board was aware of the ongoing 301 lawsuit that we're here for today, and nonetheless, wrote that language, authored that language, which is, as the district court found, very broad and sweeping language, which suggests that parties to the PLA, including us, retain any and all rights to proceed. Isn't that just a generic statement? I thought that statement by the board was made in response to your argument that it would effectively and impermissibly preempt New Jersey law. It just seems to me you're reading too much into it. You're asking us to read something specific into it that would be contrary to the board's longstanding position of opposing these sorts of 301 lawsuits. I understand your position, Your Honor, but I think it goes to what the board was attempting to grapple with. It's really a case of first impression, where the board's jurisdiction ends and state jurisdiction begins in light of the Supreme Court's decision in Boston Harbor. And you're correct. We've made the position before the board that- That's not really true. I mean, the Boston Harbor doesn't mean that the board's PLA's jurisdiction ends. It simply means that it's not necessarily preempted, but the entire national policy embodied in the MLNLRB doesn't go away. It doesn't go away. And again, I think that's what the board was grappling with. So if you take a look at the language that the board authored, from our standpoint, what does that mean? The board's primary jurisdiction when it issues a 10K award is that there's an assignment of work. Local 27 can no longer contest the assignment of work. Local 27 can no longer picket. Local 27 can no longer handbill or engage in any of the kind of traditional labor actions which a union would do when they're attempting to obtain the assignment of work. And I think that's what the board was grappling with, and that's what the board meant by this language, that because of the 10K award, Local 27 is precluded from those kind of traditional activities. However, however, as party to a state-approved project labor agreement, Local 27, as any other party, retains certain rights. And those rights include the 301 litigation. And include obtaining a substantial damages award pursuant to the 301? Yes, Your Honor. What were precluded... I'm sorry. The board would have been... the board, you say, is essentially acquiescing in advance in the notion that such a substantial damage award would not destabilize its 10K award? What would destabilize the 10K award is continued pursuit by the losing union, Local 27 in this instance, of obtaining the work assignment. Again, the board was aware of the 301 lawsuit. See, that I don't get. They obviously can't get the work if the work is done. All they can get is lost wages. That's why our cases that equate the two, I mean, it's eminently reasonable. It's almost ipse dixit. If the work is done, you can't tear down the project in order the new union build it again and pay them the wages. You've got to only go after the wages that were lost because the work went someplace else. Correct. Why aren't we right in that regard that it's exactly the same thing? The case law indicates that it is the same. However, we're left with the charge of attempting to understand this language and what did the board mean. The question really is, are we in a position now to say that Local 27's action is precluded? Should Local 27 be enjoined from proceeding if the board wants to clarify this language? It's before them. It can be clarified. I'll point out that at no time did the region make a request for reconsideration to go to the board in Washington to get a clarification of this language. In fact, there's been some significant delay in processing the unfair practice part of this case. The question, I think, for 10L purposes is whether or not the district court erred in interpreting this language and applying this language and whether or not it was an abuse of discretion by the district court to do so. If you say that the board can clarify its ruling if need be, isn't that not itself a the board here to be asking for a stay in pursuit of the 301 action pending board action? I think there's a balancing test that needs to be applied as to where the harm falls. The district court judge decided that there would be no harm in allowing Local 27 to continue to pursue. Part of what she did wrong. She engaged in traditional kind of injunction inquiry, part of which included a balancing analysis, but that's not the kind of inquiry that we get into under an injunction under the National Labor Relations Act. It's a very different inquiry in terms of an injunctive relief, isn't it? It is a different analysis, but I think the balancing element is proper under the just and proper standard, Your Honor, and that's where the district court judge entertained that standard and made the decision that on the balancing of the interest, there would be no harm, again, to the remedial purposes of 10K because, again, the work was completed. There's no job action. There's no picketing. The traditional kinds of actions that a 10K award is designed to prevent. Do you think she might have come to a different balancing if she had concluded that the board was pursuing a non-frivolous theory? Wasn't part of the premise of the district court that the board was not presenting a – that the board's theory was frivolous? And I think, again, that's based on what we believe to be the plain language in the 10K award. But I'm suggesting that if you come to a different view as to whether the board was pursuing a frivolous action, then the balancing becomes very different, doesn't it? It might turn out to be different, but the important part of the analysis is the first analysis whether or not there's reasonable cause, and I think you can't look at that in a vacuum. The elements are obviously the 10K decision in the factual scenario that gave rise to this dispute, and we shouldn't dismiss those facts on what the underlying situation was and what the subcontractor did here by voluntarily entering into a PLA knowing at the time, knowing at that time, that there was a conflicting contractual relationship. This makes the situation much different from Gundel II in those cases. If we follow Gundel I, do we even get to the just and proper analysis? I don't think you have to, Your Honor. I think you've decided on the frivolous basis. My time is up, Your Honor. Thank you very much. Thank you. Ms. Compton, you may be the only one here with access, but why not just try to find out from the board what in the heck they meant when they wrote this language in the 10K opinion? Well, Your Honor, I think that we would interpret that the language is, in fact, clear. It's just not clear in the way that Local 27 thinks it's clear. This isn't the first time. We stand by what we wrote. In my short tenure in this Court, this isn't the first time that the parties have said the language is clear for different reasons, and I think the jurists may all disagree. Well, I'd like to... Was it with the Cheshire Cat? One of the characters in Alice in Wonderland, it's clear. When I use a word, it means exactly what I want it to mean. Well, I'd like to address why I think it's clear in three quick ways. Number one, I think that, as Your Honors have pointed out, that the language that the District Court really viewed in isolation, if you look at the context of where that language comes from, it was really dealing with the boards trying to deal with this Boston Harbor argument and whether it, in fact, had jurisdiction to decide the work dispute at all. Number two, as the ALJ found in this case... But even if that's the reason, assuming that... And I think you're right. I think they were trying to say, look, we know Boston Harbor's out there. We're not ignoring it. The PLA is still valid. We're not striking down anything under state law that the Supreme Court said is not preempted. But they still said what they said. And how do you reconcile them saying that the parties to the PLA retain any right? I mean, any. And again, I kept looking for the acceptance of far-range clauses not there. Any right they may have under state law to bring a suit for damages against Donnelly for any breach of the PLA. Well, I would say to this Court that, number one, that language means any lawful right, that a union can bring forth any lawful right under the PLA, which would not include an illegal lawsuit. It just makes no sense. Except if they have the right under the PLA. And so far as the PLA is concerned, it's a lawful action. But once the board decided... And really, the board put the PLA on equal footing with the Carpenters' contract. I mean, I would agree with Local 27 that to the extent that Boston Harbor is relevant, Boston Harbor teaches that when the state acts as a market participant, as New Jersey did here, that it should be treated as a market participant. And therefore, the PLA in this case should be given no greater stature than the Carpenters' contract. And, in fact, the board treated them with equal footing. And simply was... That doesn't help you. Because the board is saying they have the rights under this other contract that has equal footing to the collective bargaining agreement. But I think it just makes no sense that the board would say, we have jurisdiction, in fact, we have primary jurisdiction to decide this work dispute pursuant to Congress. But Local 27, you can go ahead and ignore what we decide here. That simply makes no sense. Well, it doesn't make any sense, but it seems like that's what they said. Well, to the extent that this court were to find that that language is ambiguous. And, again, I would argue that it's not ambiguous, because I don't think that the board would simply create such a sea change in its longstanding precedent without coming forth and saying that it was doing that. But to the extent that this court finds that language to be ambiguous, I think that that only supports the fact that an injunction should happen in this case. It's for the board to determine these kinds of disputes. So we're in equity here then? Well, to pick up on a just and proper discussion here, Gundel 1, in fact, recognized that Section 10L was enacted so that we could preserve the board's remedial authority, protect interstate commerce, protect the public interest. In this case, if you have lawsuits such as Local 27 simply going around that seek contrary results from what the board has already decided, there's simply no reason to have Section 10K anymore. Ms. Compton, let's suppose we agreed with you that the board couldn't have meant what it appears to mean. Unfortunately, it employed a syntax that, as a presiding judge has said, has the word any in it. I think one could say, well, maybe the word to be emphasized is right, not any. And right brings into play other possible legal cultures, such as preemption. But let's assume for the moment that the board didn't mean what any of us would think it meant. One could hardly blame Local 27 from reading that language to mean, sure, we can go ahead with litigation, and we have an assurance that that's okay. Are they then still committing an unfair practice? Your Honor, I believe that based on the case law, longstanding board law, which Local 27 is surely aware of, that a lawsuit such as the one that it filed, prior, of course, to the 10K award, but continued thereafter, has an illegal objective. I'd like to point out, number one, that after the 10K award came down, Local 27 still sought reassignment of that work. It was only after the work was completed. But the board told them, from their perspective, the board just told them they could. Well, again, it makes no sense that the board would have said, we're going to give this work to the carpenters because they have the superior claim. And we have the jurisdiction to decide that. And we are the agency entrusted to decide national labor policy and protect the interstate commerce, basically, from these disruptive type of work disputes. Section 10K, which is what we are doing now, is supposed to put an end to this work dispute. But it does. I see a harmonization here that I don't understand why the board apparently doesn't want to recognize it. Everything you say about 10K and its efficacy makes perfect sense, from my perspective, in regard to getting the work done and not having these stoppages and disruptions. But the language says, any rights they may have under state law to bring a suit for damages. That presupposes that the board does its work under 10K. It chooses between the two competing unions. They move forward. The work gets done. And the other union, the aggrieved union, there's a blatant breach of contract here, reserves its right to pursue damages. Why isn't that a win-win from the board's perspective? Because it continues the jurisdictional dispute. The fact that the lawsuit is ongoing and seeks to get damages from Donnelly for having awarded the work to the carpenters, which is what the board ordered it to do. A lawsuit that seeks damages against Donnelly for doing that, in fact, continues the jurisdictional dispute. And everyone out there in the public. But why are you calling it a jurisdictional dispute? It continues a suit for damages. I mean, Donnelly made a mistake here. I don't see any distinction between whether it was an intentional mistake, a negligent mistake, or a completely innocent, honest mistake. I'm willing to assume it was a completely innocent, honest mistake. But Donnelly made a mistake. It couldn't serve two masters. And it breached a contract that it had under the PLA. Why shouldn't, under any semblance of equity and fairness, why shouldn't it have to pay damages to the sheet metal workers who were entitled under the PLA to do that work? Because that is exactly what 10-K is meant to do. In almost every case. 10-K is meant to deprive one union. It's meant to favor one union over another, even though the losing union has legal enforceable rights. Well, I hate to say it, but it is an unfortunate situation. When you have a work dispute like the one at issue here, you more often than not have two very valid contractual claims. Doesn't that send a terrible message to the contracting community, to go ahead and enter into mutually contradictory contracts and don't worry about it? The board will bail you out and we'll screw one union and take care of the other one? I mean, that seems to be a terrible precedent. I think it sends an even worse message to the public to say, you can come to the board and we'll decide your work dispute, but then you can go and challenge our work dispute decision or ignore it if you decide that you have a right to do that. I think that that sends a message to the public that the board is completely useless to decide this kind of dispute. Well, you can't challenge it to the sense you can gum up the works and prevent the work from getting done. You have to wait your turn and step to the side and then just go get some money for the breach. I guess I'm wondering, what's the harm in that? Because as this court said in Gundle 2, the difference between seeking damages for the work and actually seeking the work is ephemeral. There is almost no difference. That's what Gundle 2 said, and that is in line with longstanding board law as well as law of other circuits, that when you seek damages for work that's already been done, it's called damages in lieu of work, that that is just as coercive as seeking reassignment of the work itself, because it's punishing the employer who went to the board, got a decision by the board, the board decided, and now the losing union is basically ignoring what the board decided. It's saying, well, I know you decided that the carpenter should get the work, but we're going to go make it pay down. I can say it's punishing the employer, or I can say it's compensating the other workers for work they should have had but for the breach of contract. Let me ask this. When I asked the initial question about getting clarification, your response was, there's no need to clarify this. It's already crystal clear to me. Would you be willing to humor us if it's not as clear to us as it is to you? Is there any mechanism by which this could be resolved via the board telling someone what they meant when they wrote this crystal clear language? With any luck, they'll explain it with equal clarity. This is, in fact, the mechanism right now. Asking the court to tell them what they meant? The board has asked for an injunction of Local 27's lawsuit because right now there is an un-for-labor practice charge pending against Local 27 alleging this very thing, that its continuation of the lawsuit is illegal. Part of this may be the administrative complications because we've got the regional director, we've got the general counsel, we've got the board, and I know you said the board is doing this right now, but I assume it is the board or some laboring entity at the board, probably not too far out of law school, who drafted this wonderful language before us today on behalf of the board. It's the regional director, if I understand the way this works, who is before us here today. Is there any way that the regional director can find out what the board meant when it said any right they may have under state law, even though it is crystal clear to you and no doubt equally clear to Mr. Belland who interprets it differently? Again, I think to the extent that this court thinks that that language is ambiguous. All that the board is asking for right now is to temporarily stay the lawsuit so that the board can decide. If you'd like to phrase it as so the board can say what it meant, but ultimately the question is the board needs to decide whether this is an unfair labor practice. And it has the jurisdiction to do that. All we are asking is for a temporary stay to let the board have its say and decide once and for all whether this is a ULP. If it's not, if Local 27 is correct, and the board really did mean to have such a sea change in the law, the lawsuit can then go forward at that point. They are only seeking damages, which they could certainly seek at that point. On the other hand, the board's remedial authority is at stake here. And if this lawsuit goes forward, the parties are now in the damages stage. They're briefing damages. If it goes forward and continues, the board won't have a chance to decide whether this is in fact a ULP. And then there's going to be conflicting judgments at that point. How long is an aggrieved party supposed to wait? Well, the 301 suit is continuing as of now. I mean, as this court has recognized, the work is over. They've sought damages. That litigation has continued. I mean, we sought an injunction. The district court denied it. So at this point, the issue is before the board. It has been the ALJ decided in favor of the general counsel, found that the lawsuit was in fact. The board can't act, right, as currently? That's pending before the Supreme Court. Well, that's disputed, yes. And there are 400 or 500 cases at stake there that were decided with two board members. And there's a question as to the efficacy of orders entered by a board, whether they had a quorum, right? Well, certainly no one has contested the board's authority to issue decisions. I thought the Supreme Court has granted cert on that question. Am I wrong about that? I'm sorry? Hasn't the Supreme Court granted cert on that question? Yes, Your Honor. In a case called New Process Steel, they are going to decide that. But that certainly wasn't raised in this case. I mean, it may have a practical effect. I raise that because I suggest that they may be waiting for years upon years for the board to come up with any sort of answer in this case. Well, the board still has to function. And that question hasn't been decided yet. I mean, again, it wasn't raised in this case. But the majority of circuits have found that the board, in fact, does have jurisdiction to operate. Were there three board members? I don't know the chronology of the erosion of the board. But were there three board members in office when the 10-K was? Yes. Yes, sir, Your Honor. There were three board members signed on to the 10-K decision. So that is a valid decision. But we did discuss this whole problem of delay and this exact situation, this scenario anyhow, in Cobo, where we talked about the possibility of delay interfering with relief. Well, this court certainly has recognized, though, that the board needs time to investigate and adjudicate cases. And we certainly shouldn't penalize an innocent party or jeopardize the public interest simply because it takes time for the board to do its job. So I would just ask that this court find that we're only asking for a temporary stay and join the lawsuit. Let the board decide once and for all whether this is an illegal lawsuit. And I would submit, of course, it is. It has an illegal objective. And the board will find such. And join the lawsuit temporarily. That will preserve the board's remedial authority. It will protect interstate commerce. And it will protect the public interest. Thank you. Thank you. Very interesting and a very important case. And both Ms. Compton and Mr. Bowen, wonderful jobs. Thank you very much. I hope to see you back here on an equally clear case. It's clear.